THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* LUCIO J. PEPE AND PIETRO D'ALBA, Appellants.

First Department, July 2, 1964.

*Hyman Bravin* for appellants.

*Michael Juviler* of counsel (*H. Richard Uviller* and *William J. Jones* with him on the brief; *Frank S. Hogan, District Attorney*), for respondent.

*Per Curiam.* Defendants were convicted after trial on five counts of unlawful acts in respect to examinations (Education Law, § 225, subds. 4, 5 and 6) and one count of conspiracy to commit such crimes. The trial established the following facts: The Secretary of the Board of Medical Examiners obtained a copy of the examination questions for the June, 1961, examination to be given by the board. Dr. Ezell gave a copy of these questions to defendant Pepe, a licensed physician. Pepe arranged with Dr. Baviello, another practicing physician, to sell the questions to candidates who would take the examination. For this Pepe was to receive $20,000 which he would share with Dr. Ezell. Dr. Baviello contacted defendant D'Alba, who was a physician licensed in Italy and who was a candidate to take the examination. As a result of this contact, D'Alba agreed to raise the money from such of his follow candidates as would pay to have the questions. He raised a fund of something less than $10,000. He made up the balance himself. Dr. Baviello accepted this sum and delivered the questions to D'Alba who in turn distributed them to his subscribers. Before the examination was held the leakage of the examination ques-

tions was discovered and new questions were substituted. All of the persons mentioned learned of this, the money was returned and the copies of the questions were destroyed.

Both defendants gave statements to the State Department of Education. These statements consisted of questions and answers given under oath in the department's investigation, which, when transcribed, were signed by the respective defendants. The statements, properly designated as confessions, were received in evidence at the trial. It was claimed on the trial that the confessions were not given voluntarily. It is further argued on this appeal that the jury was not adequately instructed in regard to whether they could consider the confessions, specifically on the degree of proof required. We are in accord that this presents the only substantial question on this appeal.

We conclude that there was no error in this respect. It may be conceded that a more careful treatment would have avoided the appearance of error, and that requests to charge phrased in the language of *People* v. *Vargas* (7 N Y 2d 555) could well have been given. It is well to distinguish between error and a faultless performance. It is the instructions given and not the technique of the Judge that is the criterion.

The court did charge that unless the confessions were voluntary they could not be considered. He defined what is meant by voluntary. He also charged that every element of the prosecution's case must be established beyond a reasonable doubt. The alleged error is that these were not correlated, in that it was not specifically charged that the confessions must be shown to be voluntary beyond a reasonable doubt. However, after the conclusion of the main charge, and one of the final instructions given, was a compliance with a request by defendant Pepe. The court charged: " [I]f the jury have any reasonable doubts as to whether the statements under oath, dated July 19th, 1961, and July 25th, 1961, were obtained by the use of fear induced by threat, then and in that event they must find the defendant Pepe not guilty."

As far as this defendant is concerned, he had the benefit of his own statement of what the law is on the subject and he can hardly be heard to complain. As far as D'Alba is concerned, it is inconceivable that the jury would apply any other test to his confession than they were instructed to give to his codefendant's. And it may well be that the court in refusing D'Alba's request of a similar nature so deemed. (D'Alba's request having been submitted in writing, the jury could not have known

that it was refused or draw any distinction between the defendants from the refusal.)

Furthermore, there is very grave doubt as to whether any issue existed as to D'Alba's confession being voluntary. On the advice of counsel he waived immunity and testified before the Grand Jury. His testimony, received in evidence, parallels, almost exactly, the questions and answers he gave to the Department of Education. While he testified on the *voir dire* that he had perjured himself before the Grand Jury and stated in general terms that none of the testimony given there was true, when he came to testify in his own defense, as to most of the matters his evidence exactly followed the two prior statements. So that according to his own version, his testimony before the Grand Jury and his statements in his confession fairly represent his acts. While the fact that a confession is true does not *ipso facto* make it voluntary, when that confession is exactly like a statement that is concededly voluntary, it must go a long way toward establishing that the confession was freely given.

The judgments of conviction should be affirmed.

VALENTE, J. (dissenting). I dissent and would reverse the judgments of conviction and order a new trial. I find that the trial court's instructions as to how the jury were to discharge their responsibility in determining whether confessions obtained from defendants were uncoerced and voluntary, failed adequately and fairly to set forth the essential matters to be considered in arriving at their conclusion. The inadequacy of the instructions given, coupled with the refusal of the trial court, when requested, to charge additionally on the subject, constituted prejudicial error, as a matter of law, requiring a reversal and the granting of a new trial.

From the time the selection of the jury began and the verdict was rendered, the trial consumed a period of about eight weeks. As part of the prosecution's proof, the People relied upon incriminating statements, i.e., confessions, of the appellants. However, before the confessions were admitted into evidence, defendants challenged their voluntary character, and an extensive *voir dire* inquiry (covering about 700 pages of the record) was conducted as to the conditions under which the confessions were obtained. The Trial Judge properly concluded to submit to the jury for their determination the question of the voluntariness of the inculpatory statements.

Despite the extensive examination on the issue of the voluntariness of the confessions, the Trial Judge gave but a perfunctory charge on the subject of their admissibility in the

following words, that "any statements allegedly made by defendants to anyone in which they admitted their guilt to the crime, may be given in evidence against them, unless such statements were made under the influence of fear produced by threats or were made as a result of physical beatings." At the conclusion of the charge, the Trial Judge, at the request of defendant Pepe, did additionally instruct the jury to some further degree on the matter of Pepe's confessions. But even these supplementary instructions as to Pepe were too little and too late. Moreover, not having been given in the mainstream of the charge, where they properly belonged, the additional instructions as to Pepe were drained of their effectiveness in directing the jury's attention to this critical phase of Pepe's defense.

But a comprehensive request by counsel for D'Alba for a charge on the essential elements to be considered in arriving at a conclusion as to the voluntariness of D'Alba's confessions and for a specific charge that the standard of proof to be applied was that of "beyond a reasonable doubt," was refused by the court. The charge requested by D'Alba's counsel was proper and should have been given to the jury. There can be no dispute that the correct standard of proof is that of "beyond a reasonable doubt". (See *People* v. *Vargas,* 7 N Y 2d 555; *People* v. *Leyra,* 302 N. Y. 353; *People* v. *Valletutti,* 297 N. Y. 226.)

Despite the refusal to charge as requested by defendant, D'Alba, the People nevertheless contend that there was sufficient in the charge respecting defendant Pepe to convey adequately to the jury the standards to be applied in testing the admissibility of D'Alba's confessions, without the necessity for the requested additional instructions.

But as already indicated, the court's entire charge on the issue of the admissibility of the confessions was woefully inadequate. (See *People* v. *Everett,* 10 N Y 2d 500 and *People* v. *Vargas,* 7 N Y 2d 555, *supra,* for illustrations of the proper scope of instructions on the admissibility of inculpatory statements.) Hence, such inadequate instructions can hardly serve as a proper crutch upon which to rest a contention that they should be extended by implication to excuse the refusal to charge the specific request of defendant D'Alba as to the standards to be applied to the resolution of the issue of the voluntariness of his alleged confessions.

In an attempt to minimize the prejudicial effect of the error in instructing the jury, the majority questions whether there was any issue as to the voluntariness of D'Alba's confessions.

Primarily, it would seem that the extensive examination on the *voir dire* should dispel any such contention. Secondly, it was for the jury, under proper instructions, to resolve that question. Surely it was solely for the jury to determine which was true— D'Alba's confessions, his testimony before the Grand Jury or his testimony at the trial. He contended, at the trial, that his confessions and his testimony before the Grand Jury were untruthful, and were induced by fear of the consequences that would ensue if he did not make the inculpatory statements and similarly testify before the Grand Jury. It was for the jury, and not this court, to draw conclusions as to the voluntariness of the confessions from the claimed similarities between D'Alba's testimony at the trial and the extrajudicial statements. The defendant Pepe did not testify at the trial or on the *voir dire* but he, too, contended that his confessions were induced by fear. Certainly, we may not, on this record, treat the very crux of the defense as not even rising to the dignity of a triable issue.

There was a crucial and substantial issue of fact presented on the *voir dire* as to whether the confessions were voluntary. In effect, the resolution of that issue amounted to a trial within a trial. If the jury found that the confessions were not voluntarily made, then a substantial portion, if not the entire case, of the People would be destroyed.

Therefore, both defendants were entitled to have the jury instructed at length and in detail as to the nature of a confession, the burden of proof, the duty to determine the credibility of the witnesses on the *voir dire*, their province to decide whether the confessions were freely and voluntarily made, and what "free and voluntary" meant. Defendants were also entitled to instructions that if the jury concluded that a confession was made as a result of fear — or if the jury entertained a reasonable doubt on that subject, irrespective of whether the confession was true — the jury were obliged to reject such a confession and not to consider it in their deliberations. Finally, there would also have to be explicit instructions that if the jury found a confession was voluntarily made, then they would have to determine whether it was the truth and whether there was other evidence to corroborate the confession.

The majority opinion of this court reluctantly concedes that " a more careful treatment " of the instructions as to the confessions " would have avoided the appearance of error " and that a " charge phrased in the language of *People* v. *Vargas* (7 N Y 2d 555) could well have been given ". Moreover, the majority would relegate the inadequacy of the charge and the

refusal to give the requested additional instructions to the status of a deviation from faultless judicial technique rather than substantial error. I cannot accede to such depreciation of an error of constitutional dimensions to an inconsequential judicial peccadillo.

Finally, even though apart from the confessions, there may be other proof in the record of the guilt of defendant D'Alba, the error as to the faulty instructions cannot be disregarded. We cannot speculate as to what credit and weight the jury gave to the confessions. (See *People* v. *Donovan,* 13 N Y 2d 148, 153.) As to defendant Pepe, the exclusion of the confessions would have entitled him to an acquittal. It was thus essential that the jury receive proper and adequate instructions to enable them to perform their function in arriving at a conclusion as to voluntariness.

The failure of the trial court to charge adequately on the matter of the confessions in this case was prejudicial error, as a matter of law. The judgments of conviction as to each defendant should therefore be reversed and a new trial ordered.

BREITEL, J. P., McNALLY, STEVENS and STEUER, JJ., concur in *Per Curiam* opinion; VALENTE, J., dissents in opinion.

Judgments of conviction affirmed.