■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RODNEY NELSON, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Queens County (Leahy, J.), rendered May 15, 1986, as amended May 29, 1986, convicting him of murder in the second degree, robbery in the first degree (five counts), and criminal possession of a weapon in the second degree, upon a jury verdict, and imposing sentence of an indeterminate term of 25 years to life imprisonment on the murder charge to run concurrently to an indeterminate term of 5 to 15 years imprisonment on the weapons possession charge, those terms of imprisonment to run consecutively to five consecutive indeterminate terms of 8⅓ to 25 years imprisonment on the robbery charges.

Ordered that the judgment, as amended, is modified, on the law, to provide that the indeterminate terms of 25 years to life imprisonment and 5 to 15 years imprisonment shall run concurrently to the five consecutive indeterminate terms of 8⅓ to 25 years imprisonment; as so modified, the judgment, as amended, is affirmed.

Shortly after midnight on July 19, 1985, Richard Davis, armed with a .38 caliber pistol, Percy Santos, carrying a .22 caliber gun, and the 16-year old defendant Rodney Nelson, who was unarmed—all wearing stocking masks to cover their faces—entered Paula's Bar, a neighborhood pub in Glendale, and began to rob the bar's customers at gunpoint. When one customer, James Zahn, an off-duty lieutenant with the New York City Fire Department, resisted, Davis fired two shots, killing him. The defendant and his cohorts took cash, two pocketbooks and some jewelry from various customers and a barmaid before fleeing in a waiting vehicle being driven by the codefendant Terry Hooker.

The police learned of the identities of the perpetrators from Craig Davis, Richard Davis's brother, who intermittently acted as a police informant after becoming angry at the defendant

Nelson and his own brother Richard for taking sides against him in a dispute over a girl. Reluctant cooperation was also received from Duvalle Crosland, a friend of the perpetrators, who was present when the proceeds of the robbery were divided, and who was given one of two stolen rings.

The defendant Nelson, Santos and Hooker were arrested on July 22, 1985. All three made oral as well as videotaped statements inculpating both themselves and their accomplices. Davis was not interviewed until August 21, 1985, after he had been convicted and sentenced for another crime, when he made full oral, audiotaped and videotaped confessions on Rikers Island. The defendant Nelson, Davis and Hooker were tried jointly.

On appeal, the defendant Nelson contends, *inter alia,* that he was deprived of his right to a fair trial by the introduction into evidence of the unredacted, interlocking statements of his two nontestifying codefendants in violation of *Cruz v New York* (481 US 186). The defendant's contention is without merit, as the error was harmless beyond a reasonable doubt, and there was no reasonable possibility that the erroneously admitted evidence contributed to his conviction.

As in *People v Hamlin* (71 NY2d 750, 758-759), the defendant's own confessions were comprehensive, satisfactorily explained his part in the crime without reference to his codefendants' statements, and were corroborated by other objective evidence. He made two detailed confessions regarding his own participation in the crime, one of which was written down by Detective Beisel and the other of which was videotaped. The two confessions are essentially identical, with the result that they are mutually authenticating, and fully explain the defendant's role in the crime without reference to his codefendants' statements. All of the details of the robbery related by him tally perfectly with the testimony at trial given by the bar's various patrons and its barmaid. In addition, both Craig Davis and Duvalle Crosland linked the defendant to the preparations for the crime and the sharing of proceeds afterwards, again corroborating the defendant's confession.

Although the defendant attempted to repudiate his confession at trial indirectly, by cross-examining the People's witnesses, rather than by taking the stand, such a repudiation has been found inadequate to turn an otherwise harmless *Cruz* error into a reversible one, where there is nothing in the record to suggest that the jury did not accept the defendant's statements as voluntary and reliable, and where there was no reasonable possibility that the jury would have acquitted the

defendant if the codefendants' statements had not been introduced *(People v Hamlin, supra; People v Galloway,* 138 AD2d 735). Equally without merit is the defendant's contention that his videotaped statement should not have been admitted into evidence, because he acted surprised upon hearing his first *Miranda* warnings, and insisted that *he* wanted to ask some questions. As the court ruled in *People v Williams* (62 NY2d 285), the purpose of *Miranda* warnings has been achieved when there is a showing "that the individual grasped that he or she did not have to speak to the interrogator; that any statement might be used to the subject's disadvantage; and that an attorney's assistance would be provided upon request, at any time, and before questioning is continued" *(People v Williams, supra,* at 289). "What will suffice to meet this burden will vary from one case to the next"; but "providing a general legal education is not the business of the police or the courts" *(People v Williams, supra,* at 289). In the case at bar, examination of the "totality of the circumstances," including the defendant's age, intelligence, and experience *(Johnson v Zerbst,* 304 US 458), leads to the conclusion that the defendant understood the warnings recited to him, and that he knowingly and intelligently waived his rights, so that the hearing court correctly ruled that the videotaped statement was admissible. The defendant's clear acknowledgment on videotape that he understood his rights and waived them was not vitiated by his initial expression of surprise, nor by his insistence that he too wished to ask questions.

There is also no merit to the defendant's contention that the court's charge regarding the voluntariness of his statements was insufficient. The adequacy of a court's charge to the jury must be evaluated by examining the charge as a whole *(People v Woods,* 41 NY2d 279). Although it is error for the court to neglect to charge that the People have to prove that a defendant's statements were voluntary beyond a reasonable doubt, the error will be found harmless if the court has made it clear that the People were obliged to prove every material element of their case beyond a reasonable doubt, and no other standard of proof is mentioned *(see, People v Dean,* 112 AD2d 947). To the extent, therefore, that the court did not expressly declare that the voluntariness of the defendant's statements had to be proven by the People beyond a reasonable doubt, it erred, but the error was harmless *(People v Dean, supra; cf., People v Pepe,* 21 AD2d 417). Here, where the court repeatedly instructed the jury on the People's burden of proof beyond a reasonable doubt, and alluded to that standard on several

occasions when discussing voluntariness, the jury could not conceivably have misconstrued the proper standard to be applied.

Although the court erred in refusing to charge, at the defendant's request, that police officers are no worthier of belief than civilian witnesses, the error was harmless in the context of this case in which proof of guilt was overwhelming *(People v Crimmins,* 36 NY2d 230; *People v Brown,* 109 AD2d 746). In any event, the court delivered a lengthy and detailed charge on how to evaluate the testimony of witnesses, in the course of which it read off the names of all the witnesses who had testified at the trial, including the police officers, and explained that there was only one standard for evaluating the testimony of *all* of them. Thus, it in essence explained to the jury "that a police officer's testimony should be evaluated in the same manner as the testimony of any other witness" *(People v Brown, supra,* at 746).

We have considered the defendant's remaining contentions with respect to the propriety of the defendant's conviction and find them to be either unpreserved for appellate review or without merit.

However, Penal Law § 70.25 (2), discussing concurrent and consecutive terms of imprisonment, provides that sentences must run concurrently "[w]hen more than one sentence of imprisonment is imposed on a person for two or more offenses committed through a single act or omission, or through an act or omission which in itself constituted one of the offenses and also was a material element of the other" *(cf., People v German,* 139 AD2d 529; *People v Derhi,* 110 AD2d 709). In the case at bar, we find that, as charged to the jury, the robberies contained in the indictment were an element of the felony murder, with the result that the five consecutive terms of imprisonment imposed for robbery must run concurrently with the term of imprisonment imposed for felony murder. For that same reason, the sentence imposed for criminal possession of a weapon in the second degree was properly made concurrent to the sentence imposed on the murder charge.

Finally, we note that the record indicates that on May 29, 1986, the term of imprisonment imposed upon the defendant's conviction of criminal possession of a weapon in the second degree was amended by Justice Leahy to 5 to 15 years, to conform with the dictates of Penal Law § 70.02 (4), which fixes the minimum sentence at one-third the maximum *(see, People*

*v Fox,* 123 AD2d 642). Sullivan, J. P., Eiber, Harwood and Balletta, JJ., concur.