■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RALPH SANTANELLA, JOHN CAPPIELLO and ANTHONY TAMILIO, Appellants.—Appeals by defendants from three judgments of the Supreme Court, Kings County, one as to each of them, all rendered June 24, 1977, convicting each of them of two counts of murder in the second degree, upon a jury verdict, and imposing sentence. Judgment as to defendant Tamilio affirmed. Judgments as to defendants Santanella and Cappiello reversed, on the law, and new trial ordered as to them. Defendants were each charged, *inter alia,* with two counts of murder in the second degree. The indictment alleged that on or about August 10, 1976 defendants, "having attempted to commit and committed the crimes or robbery and burglary, and in the course of and in furtherance of such crime[s] and of immediate flight therefrom," caused the deaths of Joseph and Angelina Tucci by means of a blunt instrument. Each of the defendants employed a distinct strategy on his defense. Defendant Santanella did not testify in his own behalf. Upon summation Santanella's counsel conceded that his client had driven defendants Cappiello and Tamilio to the Tucci home on the morning of August 10, 1976. Santanella was, in fact, identified by a neighbor of the Tuccis as one of those who was seen emerging from the alleyway of the Tucci home on the morning in question. Tamilio was also so identified. However, Santanella's counsel sought to portray his client as a "patsy" in this case. He contended that Santanella had no idea where he was taking Cappiello and Tamilio, that once at the Tucci home he took no part in the crime and that he had received no part of the proceeds therefrom. To the contrary, an acquaintance of Santanella testified at the trial that Santanella had admitted to him that he had participated in a robbery in which two people had been killed. However, Santanella disclaimed responsibility for the actual murders. De-

fendant Cappiello made several statements to the police, the Assistant District Attorney and friends, which were admitted into evidence at the trial. Those statements clearly implicated Cappiello in the alleged robbery and burglary. Cappiello did not testify on his own behalf. Upon summation, his counsel conceded that Cappiello was guilty of the underlying felony. He, too, denied that his client had any knowledge that a murder would be committed and denied that his client had in any way participated in the murders. Defendant Tamilio, who had also been identified as one of those who emerged from the alleyway of the Tucci home on the morning of August 10, 1976, knew Joseph Tucci. Tamilio's father and Mr. Tucci were business associates. Tamilio, testifying in his own behalf at the trial, conceded that he, Santanella and Cappiello had gone to the Tucci home on the morning of August 10. However, he stated that he was doing an errand for his father and denied that the crime was committed at that time. It was his contention that the Tuccis were alive at the time he was seen emerging from the alleyway and he presented several witnesses in an attempt to establish that claim. Upon summation, Tamilio's counsel argued that some time subsequent to the time his client left the Tucci home that morning, someone entered and committed the crimes for which defendants were indicted. At the conclusion of the summations, the court charged the jury. As a part thereof, the court charged the affirmative defense to felony murder. The crime of felony murder is defined by subdivision 3 of section 125.25 of the Penal Law. After the definition the affirmative defense is set forth as follows: "except that in any prosecution under this subdivision, in which the defendant was not the only participant in the underlying crime, it is an affirmative defense that the defendant: (a) Did not commit the homicidal act or in any way solicit, request, command, importune, cause or aid the commission thereof; and (b) Was not armed with a deadly weapon, or any instrument, article or substance readily capable of causing death or serious physical injury and of a sort not ordinarily carried in public places by law-abiding persons; and (c) Had no reasonable ground to believe that any other participant was armed with such a weapon, instrument, article or substance; and (d) Had no reasonable ground to believe that any other participant intended to engage in conduct likely to result in death or serious physical injury." The court's charge on this issue, was, in pertinent part as follows: "We have another portion of our law that is peculiar to felony murder cases, and I have had your attention and I would like to keep it. So, please listen. This is called an affirmative defense. We call it affirmative defense of non-killer. The law is as follows: On proof of certain mitigating circumstances the law allows a jury to find a defendant not guilty of felony murder who, although a participant in the underlying felony was not himself the person who caused the death of the decedent. I emphasize, however, that you are not to consider this defense unless the evidence satisfies you beyond a reasonable doubt that such defendant has been proven guilty of felony murder. It is only available to a non-killer defendant, and only after you, the jury, are satisfied of the guilt of such defendant beyond a reasonable doubt as to the felony murder. Only then may the jury turn to a consideration of the mitigating factors of his defense, that he was a non-killer. * * * Before you may find a non-killer defendant not guilty of felony murder by reason of the foregoing affirmative defense, you must be satisfied that all of these mitigating factors have been proved when all of these mitigating factors have been proved to exist the law then allows the jury to extend mercy to such non-killer by finding him not guilty of the felony murder, but guilty instead of the robbery or the burglary in which he

participated. * * * If from the evidence adduced at this trial you are satisfied beyond a reasonable doubt that a defendant has been proven guilty of felony murder, it is only then that you may turn to a consideration of the mitigating factors of his defense that he was not the killer. If you decide to consider this, you must be satisfied that all of the mitigating factors have been proved to exist under the instructions I have given to you. If you are satisfied that all the mitigating factors have been proved to exist as to a non-killer defendant, you may, if you so decide, extend mercy to such non-killer defendant by finding him not guilty of felony murder, but guilty instead of [the] robbery or burglary in which he participated, in the degree that has been proven beyond a reasonable doubt." All of the defendants now claim that that portion of the charge is reversible error. There can be no question that that portion of the charge was improper. By it, the court gave the jury the option of (1) not considering the affirmative defense, even if it were satisfied that one or more of the defendants was otherwise guilty of felony murder or (2) finding one or more of the defendants guilty of felony murder, notwithstanding the fact that all of the elements of the defense had been made out, because it felt that the extension of mercy was inappropriate under the circumstances of the case. There is no authority for the proposition that a jury may be given untrammeled discretion as to the application of an affirmative defense. If the jury had found any or all of the defendants guilty of felony murder beyond a reasonable doubt, it was bound to consider whether such defendant or defendants had established the elements of the affirmative defense by a fair preponderance of the evidence. If the jury had then found those elements to have been properly established, it would then have been bound to enter a verdict of not guilty of felony murder. While the affirmative defense is a clemency statute in the sense that it requires the jury to consider, in its deliberations, certain circumstances in mitigation of the acts alleged, such "mercy" arises automatically upon satisfaction of the statutory requirements. There is no option. We hold that that portion of the charge was clearly prejudicial as to defendants Santanella and Cappiello. The evidence presented at the trial would clearly have permitted the jury to find that one or both of those defendants had participated in the underlying robbery and burglary and, consequently, without more, were guilty of felony murder. At the same time, however, the jury could also have properly found that the evidence showed that one or both of them had satisfied all of the elements required to acquit them of felony murder by reason of the affirmative defense. It is of no moment that neither defendant testified in his own behalf at the trial. The jury could have found the defense to have been established by the prosecution's own evidence, particularly by the statements made by each of those defendants. It is not apparent from the general verdict whether the jury refused to give any consideration to the defense, or considered the defense but found the elements not to have been established by a fair preponderance of the evidence, or considered the defense and found the elements to have been properly established, but refused to find in favor of Santanella and/or Cappiello because it felt them to be unworthy of mercy. All these were possibilities under the court's charge. Accordingly, the said defendants are entitled to a new trial. The situation is different as to defendant Tamilio. As indicated, his defense was that he was not present at the time the crimes were committed. The prosecution's evidence, if believed, would tend to establish that Tamilio was in fact present at the time the robbery and burglary had been committed, that he participated in those crimes and, consequently, that he was guilty of felony murder. Conversely, there is no

evidence in the record tending to support a theory that Tamilio was a nonparticipating bystander to the murders. Under these circumstances, the jury, as to Tamilio, could not properly have returned a verdict of not guilty of felony murder based upon the establishment of the affirmative defense. Thus, the court's improper charge was not prejudicial as to him and he is not entitled to a new trial on that basis. We have considered defendant Santanella's claim that the court erroneously denied his motion to suppress certain identification evidence and defendant Cappiello's argument that the court erroneously denied his motion to suppress certain statements made by him to the police and the Assistant District Attorney. We find both of those arguments to be without merit. Accordingly, upon the remand, the court need not conduct a new *Wade* or *Huntley* hearing. Upon this disposition of the appeals of defendants Santanella and Cappiello, we need not reach the remaining arguments raised by them, and we do not do so. We do find it necessary, however, to dispose of one further argument raised by defendant Tamilio. At the trial, Tamilio made several motions for a severance based upon *Bruton v United States* (391 US 123), contending that the statements of his codefendants which were introduced at the trial, particularly those of Cappiello, inculpated him in the crimes charged and, accordingly, heightened the risk that the jury would use them to find him guilty. The court denied each of the motions. Tamilio now cites the failure to grant him a separate trial as reversible error. We find no merit to that contention. In *People v McNeil* (24 NY2d 550), the Court of Appeals adopted the holding of other State and Federal cases to the effect that the *Bruton* rule was inapplicable where each of the defendants has made a confession almost identical to the confessions of his codefendants. The critical consideration is whether the confession of the defendant relying upon *Bruton* "interlocks with and supports" the confessions of the other defendants *(People v McNeil, supra,* p 553). If it does, a separate trial is not required. In this case, defendants Santanella and Cappiello made a statement or statements implicating themselves and Tamilio in the robbery and burglary. Tamilio himself made a statement in which, at the least, he admitted participation in the underlying crimes. Thus, to that extent, Tamilio's statement interlocks with and supports those of his codefendants. Certain of the statements of Santanella and Cappiello also either implied or asserted that it was Tamilio who actually committed the murders of the Tuccis. Tamilio's own statement does not clearly implicate himself as the actual murderer. Thus, to that extent, Tamilio's statement does not interlock with and support those of his codefendants. However, under the circumstances of this case, such failure is not prejudicial and does not prevent application of the *McNeil* rule. Since the indictment charged Tamilio with felony murder, his conviction on those counts flowed automatically from the prosecution's showing that he participated in the underlying felony, during the course of which one of the defendants caused the deaths of the Tuccis. It was unnecessary for the prosecution to prove that Tamilio actually committed the murders. Accordingly, so much of the statements of Santanella and Cappiello as characterized Tamilio as the actual murderer was extraneous to the question of Tamilio's guilt or innocence of felony murder. Therefore, those portions of the codefendants' statements could not have been prejudicial to Tamilio, and it was unnecessary that such portions of those statements interlock with and be supported by a statement by him. We note that the discrepancy between Tamilio's statement and those of his codefendants regarding Tamilio's role as the murderer might have been relevant to the establishment of the affirmative defense to felony murder, since a defendant is required to

establish, as part of that defense, that he did not commit the homicidal acts. However, as noted, Tamilio did not rely upon, and the evidence as against him did not suggest the availability of, the affirmative defense. Accordingly, since Tamilio's own statement interlocked with and supported those of his codefendants on the issue of his participation in the underlying felony, the standard enunciated in *People v McNeil (supra)* was satisfied and there was no error in the court's refusal to grant Tamilio a separate trial. Shapiro, J. P., Cohalan, Margett and O'Connor, JJ., concur.