■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v KAREEM ABDUL LATIF, Also Known as GEORGE SUAREZ, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Kings County (Pincus, J.), rendered December 20, 1983, convicting him of murder in the second degree (four counts), attempted robbery in the first degree and criminal possession of a weapon in the second degree, upon a jury verdict, and imposing sentence.

Ordered that the judgment is reversed, on the law, and a new trial is ordered; no questions of fact have been raised or considered.

The charges against the defendant and his codefendants Robert Rodriguez and Milton Cotto resulted from an October 12, 1982, attempted robbery at a Brooklyn pharmacy, during which Milton Scher (the proprietor) and Rose Degennaro were shot and killed. After the denial of the defendant's severance motion, he was jointly tried with his codefendants.

As part of the People's case, the prosecutor was permitted to introduce into evidence, over the defendant's objection, the codefendant Rodriguez's statements made to law enforcement officers and to Sandra Nieves, an individual known to all the defendants, and the codefendant Cotto's statements made to law enforcement officers. In all these statements, the codefendants implicated themselves and the defendant, specifically claiming that the defendant was the instigator of the crime. Rodriguez further asserted that it was the defendant who had shot the victims in the bathroom of the pharmacy. The trial court instructed the jury that these statements could only be considered as against the individual who allegedly made them. In addition, Nieves testified that on three occasions the defendant had spoken to her concerning the incident. She stated that the defendant had admitted, in relevant part, that he had shot the victims and that he had used a .357 magnum loaded with .38 caliber bullets. Finally, the People introduced in pertinent part, evidence that in 1979, the defendant had purchased a .357 magnum, that a .357 magnum could be used with .38 caliber bullets, that while the actual murder weapon was not recovered by the police, a .38 caliber bullet jacket and two .38 caliber bullets were found at the crime scene, and that a palmprint lifted from the bathroom doorknob matched the palmprint of the defendant, albeit there was no evidence when the print was made.

While Rodriguez and Cotto did not testify, the defendant testified and denied any participation in the crime. Specifically, he stated that Cotto, Rodriguez and Michael Donnes (Nieves' cousin) had confessed to him that they had shot the proprietor of the pharmacy and another person. The defendant admitted that he had purchased a .357 magnum gun in 1979 but he claimed that he had sold it prior to this incident. Further, he had filled his prescriptions at the pharmacy, and because he had known Scher for about three years, he had frequently been permitted to use the bathroom, although it was not open to the public. In addition, he claimed that Nieves had lied when she said he had made incriminating statements to her, and that Rodriguez and Cotto had implicated him only because of police coercion. During summation,

the defendant's counsel attempted to persuade the jury that Nieves had lied because she was protecting her cousin and the codefendants.

As the People concede, the defendant's rights under the Confrontation Clause of the United States Constitution were violated by the admission into evidence of his nontestifying codefendants' confessions at their joint trial, even though the jury was instructed not to consider the statements against the defendant and the defendant's own statements were admitted against him (see, Cruz v New York, 481 US —, 107 S Ct 1714, on remand 70 NY2d 733; Richardson v Marsh, 481 US —, 107 S Ct 1702).

While the People further contend that despite the error, there is no need for a new trial, we must disagree.

As stated by the Supreme Court in Cruz v New York (supra, 481 US, at —, 107 S Ct, at 1718): "A codefendant's confession will be relatively harmless if the incriminating story it tells is different from that which the defendant himself is alleged to have told, but enormously damaging if it confirms, in all essential respects, the defendant's alleged confession. It might be otherwise if the defendant were standing by his confession, in which case it could be said that the codefendant's confession does no more than support the defendant's very own case. But in the real world of criminal litigation, the defendant is seeking to avoid his confession—on the ground that it was not accurately reported, or that it was not really true * * * In such circumstances a codefendant's confession that corroborates the defendant's confession significantly harms the defendant's case, whereas one that is positively incompatible gives credence to the defendant's assertion that his own alleged confession was nonexistent or false".

In this case, Nieves' account of what the defendant had purportedly told her essentially mirrored what Rodriguez had told Nieves, and was further confirmed by the numerous statements made by Rodriguez and Cotto to law enforcement personnel. However, "the precise content and even the existence of the [defendant's] own confession were open to question, since they depended upon acceptance of [Nieves'] testimony", while at least two of each of the codefendants' many statements made to law enforcement officers were preserved on audiotapes and played for the jury (Cruz v New York, supra, 481 US, at —, 107 S Ct, at 1718). In addition, the defendant testified that Nieves had lied, and during summation his counsel claimed that she had a motive to falsely claim that he had confessed to her.

While there was independent evidence which tended to corroborate the confessions made by all the defendants, the only evidence admissible against the defendant which directly linked him to the crime was Nieves' testimony concerning his purported statements. Under these circumstances, we cannot deem harmless the erroneous admission into evidence of the challenged statements of the defendants' codefendants since " 'there is a reasonable possibility that the * * * [error] might have contributed to the conviction' " (People v Crimmins, 36 NY2d 230, 241, quoting from Fahy v Connecticut, 375 US 85, 86; see, People v Cruz, 70 NY2d 733, supra).

This case is factually distinguishable from this court's decision in People v McCain (134 AD2d 287). Mollen, P. J., Lawrence, Kunzeman and Harwood, JJ., concur.