■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ANTHONY W. ORTIZ, Appellant.—Appeal by the defendant from a judgment of the County Court, Nassau County (Boklan, J.), rendered March 8, 1985, convicting him of robbery in the first degree (two counts) and kidnapping in the second degree (two counts), upon a jury verdict, and imposing sentence.

Ordered that the judgment is modified, on the law, by reversing the convictions of kidnapping in the second degree, vacating the sentences imposed thereon, and dismissing those counts of the indictment; as so modified, the judgment is affirmed.

The defendant was convicted of charges stemming from the robbery of an IBI Security Service (hereinafter IBI) van on January 30, 1984. William Wilhelmsen and Frank Orrigo, two IBI guards, were about to unload bags of money in the parking lot in back of the Norstar Bank in Hempstead, when they were accosted at gunpoint by the defendant Anthony Ortiz, and his codefendant Edward Rodriquez. Both Wilhelmsen and Orrigo were disarmed, handcuffed and forced to lie down in the back of the van while a third perpetrator (Thomas Androvett, who was separately tried and convicted), whom they did not see, drove the van to a secluded area near the border of Garden City and Hempstead, Long Island. Both Wilhelmsen and Orrigo then heard money being removed from the van.

At about the same time, Sergeant William DeVoe was called to assist Garden City Police Officer Thorn with a disabled motorist near the intersection of Meadow Street and Magnolia Street in Garden City. Meadow Street is also near the border of Garden City and Hempstead. While they were assisting the disabled motorist they noticed a blue Mercury sedan parked in the vicinity of a nearby train trestle, a place where cars were not usually parked. They noticed a large blue and orange bag on the same side of the street as the car and decided to investigate. As they approached the car, they noticed several money bags located at the base of the footpath which extended from Meadow Street in Garden City to Morrell Street in

Hempstead. They also noticed similar bags under the train trestle and still more in an area west of the footpath. Some of the bags were heavy and appeared to contain money, and one of the bags had "European American Bank" written across it. Though there was snow on the ground, DeVoe noticed that the bags were not wet and thus did not appear to have been left overnight.

The officers, both of whom were in uniform, then observed Ortiz and Rodriquez come down the footpath together and walk off in different directions. The officers called out to them and they both came back. DeVoe asked them if they knew one another and they said that they did not. DeVoe brought to their attention that they had been seen walking together and they still denied knowing one another. Additionally, although both men stated that they were from The Bronx, Ortiz claimed that he was just taking a walk while Rodriquez explained that he was on his way to Social Services. Both Rodriquez and Ortiz appeared "fidgety" and nervous.

DeVoe then walked up the path to see if anything was there, while Thorn stayed back with Rodriquez and Ortiz. As he walked he saw clothing strewn on either side of the path, including hats, coats and gloves. Through the fence at the end of the path, he saw a van parked on Morrell Street. Inside the van he discovered the handcuffed security guards, who were then escorted down the path and identified the defendants. At that point Ortiz and Rodriquez were placed under arrest and taken back to police headquarters.

The defendant claims that the officers unlawfully detained him and that therefore any evidence derived from this unlawful detention should have been suppressed. We disagree. The observations of the officers of what were apparently money bags, on the ground in close proximity to a car parked in an unusual location, provided a sufficient basis for a founded suspicion that criminality was afoot. When Ortiz and Rodriquez appeared at the scene, coming from the general direction of the trail of bags, the officers had sufficient cause to stop them and make inquiry as to their identification and purpose (see, People v De Bour, 40 NY2d 210). The subsequent statements of the defendant and the codefendant concerning their activities were inconsistent and illogical, and their nervous and apprehensive appearance gave the officers additional reasons to suspect that both had committed a crime. Thus, at this point, the officers were clearly justified in detaining the defendant and the codefendant pending further investigation (see, People v Hicks, 68 NY2d 234). Moreover, after the defendant

and the codefendant were identified as the perpetrators, there was probable cause for their arrest.

We do, however, agree with the defendant's contention that the merger doctrine must be applied to this case, and therefore his convictions of kidnapping in the second degree must be reversed, the sentences imposed thereon vacated and those counts dismissed *(see, People v Cassidy,* 40 NY2d 763, 768; *People v Androvett,* 135 AD2d 640). The record reveals that any detention of the victims was incidental to the commission of the underlying robbery.

We further note, although the issue was neither preserved for review nor raised on appeal, that it was error to admit the confession of the codefendant Rodriquez into evidence at the joint trial. Where a nontestifying codefendant's confession incriminating the defendant is not directly admissible against the defendant, the Confrontation Clause bars its admission at their joint trial, even where the jury is instructed not to consider it against the defendant and even where the defendant's own confession is admitted against him *(Cruz v New York,* 481 US —, 107 S Ct 1714; *People v Reed,* 136 AD2d 577). Nevertheless, the defendant's own confession may be considered on appeal in assessing whether the error was harmless *(People v Cruz,* 70 NY2d 733; *People v Reed, supra).* The evidence adduced at trial included a strong identification of the defendant by William Wilhelmsen, the voluntary confession of the defendant, a hair sample from the defendant which matched the hairs found on the hats at the scene, as well as testimony that the defendant was apprehended in the area where the police found the stolen money and the weapons used in the commission of the crime. This evidence constituted overwhelming proof of the defendant's guilt, and there was no reasonable possibility that the jury would have acquitted the defendant if the codefendant's statement had not been admitted. Accordingly, the error was harmless beyond a reasonable doubt *(see, People v Reed, supra).*

Finally, the defendant's sentence was proper *(see, People v Scott,* 55 AD2d 963). Mangano, J. P., Bracken, Spatt and Harwood, JJ., concur.