■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ANDRE GALLOWAY, Appellant.—Appeal by the defendant from a judgment of the County Court, Nassau County (Delin, J.), rendered April 19, 1985, convicting him of attempted murder in the second degree, robbery in the first degree (three counts), robbery in the second degree and assault in the first degree (two counts), upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing, of that branch of the defendant's omnibus motion which was to suppress his statements to the police.

Ordered that the judgment is affirmed.

The defendant was tried jointly with his codefendants David and Frederick Glover and Raymond Foreman for the shooting of Beatrice Aiken during the robbery of a store.

On April 9, 1984, at approximately 7:00 P.M., Valine Winfrey entered "200 Kinds of Kandy", a store located in the Fairview Shopping Center on Grand Avenue in Baldwin, New York. Shortly thereafter, two young black males entered and announced a holdup. The defendant approached Ms. Winfrey while the other perpetrator, the codefendant David Glover, confronted Ms. Aiken, who was the store's manager. Ms. Aiken began struggling with David Glover when, suddenly, the defendant joined the struggle and fired two shots at Ms. Aiken, seriously wounding her.

Perry Pettus and Stephen Hannigan were also in the area at that time. Prior to entering the Off-Track-Betting parlor located next to the store, Pettus observed 2 black males, 1 of whom was holding the store's door open. About five seconds after entering the Off-Track-Betting parlor, Pettus heard a shot and ran outside but did not see anybody. Hannigan had observed a couple of black males in the store as he entered the adjacent laundromat. Not more than five minutes later, he heard two "popping" sounds and saw two people running from the direction of the store.

Frederick Glover and Raymond Foreman were apprehended by Police Officer Martin Rea only a few minutes after the crime, within a short distance of the shopping center. They were then transported back to the shopping center for show-ups, and Pettus and Hannigan identified the codefendant Frederick Glover but not the codefendant Raymond Foreman. After being confronted with certain inconsistencies in their first statements to police, both Frederick Glover and Raymond Foreman made confessions admitting that they acted as look-outs while the defendant was the gunman with David Glover assisting him in the store.

Marie Glover, the mother of the codefendants Frederick and David Glover, arrived at the police station with the defendant and David Glover, who were arrested and questioned. The defendant made a statement which indicated, *inter alia,* that he and David Glover proceeded to the shopping center, placed stocking masks over their faces and entered the store. Frederick Glover and Raymond Foreman were to remain outside acting as lookouts. The defendant ran towards a woman, Ms. Winfrey, in the back and pointed his gun at her. David Glover went to the cash register and tried to remove the money contained therein. A heavyset woman, Ms. Aiken, started interfering and the defendant, who had dragged Ms. Winfrey to the front, shot Ms. Aiken twice. The statements made by defendant, the codefendant David Glover and the codefendant Raymond Foreman were admitted into evidence at the trial with limiting instructions to the jury.

The defendant testified in his own behalf, denying any participation in the robbery and shooting. He stated that Mrs. Glover had told him that it would be in his best interest to talk to the police. Moreover, she advised him that any cooperation would be relayed to the District Attorney.

Initially, the defendant contends that he did not knowingly, voluntarily and intelligently waive his right to counsel prior

to making certain inculpatory statements. He testified at the suppression hearing that, while in custody, he communicated a desire to speak to his mother and an attorney. Conversely, Detective Dempsey, the interrogating officer, testified that the defendant acknowledged understanding his constitutional rights and stated that he was willing to speak without an attorney. The hearing court credited the People's witnesses and found that the defendant had effectively waived his right to counsel prior to making his statement. Inasmuch as the court's decision was supported by the record, we find no basis for reversal *(see, People v Prochilo,* 41 NY2d 759; *People v Armstead,* 98 AD2d 726).

Further, despite the defendant's protestations to the contrary, there is no basis to support a finding that Mrs. Glover was acting as an agent of the police. In this regard, the defendant is unable to point to any testimony or evidence to establish that Mrs. Glover's actions were instigated or supervised by the police *(see, People v Ray,* 65 NY2d 282, 286; *People v Adler,* 50 NY2d 730, 737, *cert denied* 449 US 1014; *People v Esposito,* 37 NY2d 156; *People v Horman,* 22 NY2d 378, 380, *cert denied* 393 US 1057).

A question arises under the decision in *Cruz v New York* (481 US —, 107 S Ct 1714), with respect to the admission into evidence of the confessions by two of the codefendants at the joint trial. In that case, the Supreme Court held that where a nontestifying codefendant's confession incriminating the defendant is not directly admissible against the defendant, as it does not bear sufficient indicia of reliability, the Confrontation Clause bars its admission at their joint trial. Such a bar exists even if limiting instructions are given to the jury and even if the defendant's own confession is admitted against him. However, the error in admitting such statements does not, under the circumstances herein, require reversal of the judgment of conviction.

Where a Confrontation Clause violation is involved, the defendant's own confession may be considered on appeal in assessing whether the violation was harmless *(see, Cruz v New York, supra).* The error under review will be deemed harmless only where it can be said that that error was harmless beyond a reasonable doubt *(see, Harrington v California,* 395 US 250; *People v Smalls,* 55 NY2d 407). To satisfy that criterion, there must be overwhelming proof of guilt and no reasonable possibility that the jury would have acquitted the defendant but for the subject error *(see, People v Crimmins,* 36 NY2d 230).

The evidence adduced at trial, including the defendant's

confession to law enforcement officers which was properly found to be voluntary, the out-of-court identification of the defendant as the gunman by the eyewitness Ms. Winfrey, and the recovery of the gun in the precise hiding place revealed by the defendant provided overwhelming evidence of the defendant's guilt. Furthermore, there was no reasonable possibility that the jury would have acquitted the defendant if the codefendants' statements had not been introduced. Under the circumstances, the error involved in admitting the nontestifying codefendants' confessions at the joint trial was clearly harmless beyond a reasonable doubt (cf., People v Cruz, 70 NY2d 733).

The evidence, when viewed in a light most favorable to the People, was legally sufficient to support the defendant's conviction (see, People v Lewis, 64 NY2d 1111). Moreover, upon the exercise of our factual review power, we are satisfied that the verdict was not against the weight of the evidence (see, CPL 470.15 [5]).

Finally, the court did not err in imposing consecutive sentences for the crimes of attempted murder in the second degree and robbery in the first degree. It was established that these crimes involved "disparate or separate acts" (see, Penal Law § 70.25 [2]; People v Underwood, 52 NY2d 882, 883; People v Brathwaite, 63 NY2d 839, 843). Moreover, the sentences imposed were not unduly harsh or excessive.

We have considered the defendant's remaining contentions and find them to be without merit. Kunzeman, J. P., Kooper, Spatt and Sullivan, JJ., concur.