■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LEE RAY, Appellant.

The defendant Lee Ray, and codefendants Geraldine Ryant and Kenneth Singleterry were jointly indicted and tried for the September 17, 1979, shooting death of Henry Earl Ryant. Geraldine Ryant was the wife of the decedent. The victim's body was discovered by a pedestrian on St. Marks Avenue, Brooklyn. The victim had been shot once in the chest by a

small caliber bullet and had died as a result of this wound. Significantly, there were no witnesses who observed the shooting nor was the murder weapon recovered. The crux of the prosecution's case was the testimony of one Priscilla Banks. Prior to her testifying, counsel for the defendant moved to preclude the admission of her testimony on the ground that it would result in a *Bruton* violation *(Bruton v United States,* 391 US 123). The Trial Justice denied the motion on the basis of the "interlocking" nature of the statements allegedly made by the defendants.

Banks testified that she resided in the same apartment building as Kenneth Singleterry and Geraldine Ryant, that the defendant lived in the apartment building next door, and that she had known each of them for about 10 years prior to the incident in question. According to Banks, she heard a loud noise on the morning of the day of the shooting and proceeded to Geraldine Ryant's apartment. The pair then went to the street and discovered the victim's body. After returning with Ryant from the police precinct, they allegedly had a conversation in Ryant's apartment that afternoon during which Ryant told her, "I told you I was going to do it". Upon leaving Ryant's apartment, Banks went into a park across the street and spoke with Kenneth Singleterry and the defendant. Banks testified that both Singleterry and the defendant separately informed her, "Yeah, we killed the M-F". Banks then testified that on the day of the victim's wake she again spoke to Ryant who told her "that she had gave them three hundred dollars to scare him". When asked to identify the persons Ryant referred to as "them", Banks responded that "[s]he said Kenneth and Lee. She said she gave them three hundred dollars to scare him, not to hurt him or anything, just to scare him because he had slapped her around". On cross-examination, Banks indicated that although she had spoken to the police on numerous occasions, she had not informed the police of these conversations with Ryant, Singleterry and the defendant until February 1980, five months after the murder.

The defendant, Kenneth Singleterry and Geraldine Ryant were convicted, upon a jury verdict, of murder in the second degree. Subsequently, Ryant's conviction was set aside and upon retrial she was acquitted.

Prior to sentencing, the attorney for the defendant noted for the record that after the trial had ended, he had received from the prosecutor excerpts from a memorandum book recorded by a homicide detective who had investigated the victim's death. The extracts from the memorandum book,

which the prosecutor conceded was *Rosario* material *(see, People v Rosario,* 9 NY2d 286, *cert denied* 368 US 866), contained Detective Mack's notes regarding the content of a discussion he had with the People's principal witness Priscilla Banks on October 4, 1979. The notes indicated that Banks had learned from a third party, "Tommy", a neighborhood grocer, that Singleterry had killed the victim. Counsel argued that the People's failure to turn over this *Rosario* material required setting aside the verdict. The defense counsel also renewed his *Bruton* violation motion for reversal. The Trial Justice denied the motion.

We find that under the facts of this case there must be a new trial. The prosecutor's failure to turn over the homicide detective's memorandum book, which contained a prior inconsistent statement of the People's primary witness, was a violation of the *Rosario* rule. Furthermore, changes in the law subsequent to the conviction in this case render the admission of the interlocking confessions of the defendant and his codefendants reversible error *(Cruz v New York,* 481 US 186, 107 S Ct 1714).

The Court of Appeals has repeatedly stated that the *Rosario* rule (codified in CPL 240.45 [1] [a]) is firmly founded upon the principle that "a right sense of justice entitles the defense to examine a witness' prior statement, whether or not it varies from his testimony on the stand" *(People v Rosario, supra,* at 289; *see also, People v Jones,* 70 NY2d 547, 550; *People v Novoa,* 70 NY2d 490, 498; *People v Ranghelle,* 69 NY2d 56, 62; *People v Perez,* 65 NY2d 154, 158). "When, as a result of the prosecutor's violation of the *Rosario* rule, defense counsel has been deprived of material of which he or she is unaware or cannot otherwise obtain, there is no way, short of speculation, of determining how it might have been used or how its denial * * * might have damaged defendant's case" *(People v Jones, supra,* at 552).

The People concede that a violation of the *Rosario* rule, as occurred here, requires automatic reversal unless the material which was not disclosed was the "duplicative equivalent" of other appropriately surrendered *Rosario* material. It is the People's argument that because the record presently before this court is silent as to what *Rosario* material was in fact disclosed to the defendant, a hearing is necessary to determine whether that material was duplicative of the memorandum book entries.

Although it is true that reversal is not mandated where the

omitted statements are "duplicative equivalents of statements previously turned over to the defense" *(People v Consolazio,* 40 NY2d 446, 454), "[s]tatements are not the 'duplicative equivalent' of previously produced statements * * * just because they are 'harmonious' or 'consistent' with them" *(People v Ranghelle, supra,* at 63). Moreover, where there is a failure to turn over *Rosario* material, the burden is on the People to establish that the omitted material was duplicative.

In the instant case, when the omission came to light just before sentencing, the trial prosecutor did not contend that the material was duplicative, but merely argued that the prior statement was perfectly consistent with the witness's trial testimony. Similarly, on appeal the People have offered no evidence that the statement was duplicative. Thus the People's belated request for a hearing on this issue is denied.

It is without question that a *Rosario* violation is not subject to a harmless error analysis. When "the prosecution fails completely in its obligation to deliver such material to defense counsel, the courts will not attempt to determine whether any prejudice accrued to the defense. The failure constitutes per se error requiring that the conviction be reversed and a new trial ordered" *(People v Ranghelle, supra,* at 63; *see also, People v Novoa, supra,* at 499; *People v Jones, supra,* at 551).

Applying the above-stated principles to the present case, we find that the prosecution's complete failure to disclose a witness's prior statement constitutes per se error requiring reversal and a new trial.

With respect to the defendant's contention that his Sixth Amendment right to confrontation was violated when the statements of the nontestifying codefendants were admitted into evidence via the People's witness Banks, we conclude that this error was not harmless. Despite the fact that the statements of the codefendants Ryant and Singleterry did not name the defendant, these statements were "substantially identical" *(People v Cruz,* 66 NY2d 61, 69, *revd* 481 US 186, 107 S Ct 1714, *supra),* to those of the defendant.

While the Confrontation Clause of the United States Constitution bars the admission, at a joint trial, of a nontestifying codefendant's confession which serves to incriminate the defendant even if the defendant's own confession is admitted against him, the defendant's own confession may be considered on appeal in assessing whether any violation of the Confrontation Clause was harmless *(Cruz v New York, supra,* 481 US, at —, 107 S Ct, at 1719). Where a Confrontation

Clause violation is involved, the error under review will be deemed harmless only where it can be said that it was harmless beyond a reasonable doubt *(Harrington v California,* 395 US 250; *People v Smalls,* 55 NY2d 407). To satisfy that criterion, there must be overwhelming proof of guilt and no reasonable possibility that the jury would have acquitted the defendant but for the error *(People v Crimmins,* 36 NY2d 230; *see, People v Williams,* 136 AD2d 581; *People v Latif,* 135 AD2d 736; *People v McCain,* 134 AD2d 287).

In the instant case, we conclude that the error occasioned by the violation of the *Bruton* rule was not harmless. Banks' account of what the defendant had allegedly told her mirrored what Singleterry had told Banks, and was corroborated by what Ryant purportedly told Banks. "[T]he precise content and even the existence of the [defendant's] own confession were open to question, since they depended upon acceptance of [Banks'] testimony" *(Cruz v New York, supra,* 481 US, at —, 107 S Ct, at 1718).

The only evidence admissible against the defendant which directly connected him to the crime was Banks' testimony concerning the defendant's alleged statement. There was no independent evidence which tended to corroborate the confessions made by all the defendants. Under these circumstances, we cannot deem harmless the erroneous admission into evidence of the challenged statements of the codefendants since " 'there is a reasonable possibility that the * * * [error] might have contributed to the conviction' " *(People v Crimmins,* 36 NY2d 230, 241, *supra,* quoting from *Fahy v Connecticut,* 375 US 85, 86; *see, People v Latif, supra; cf., People v Williams, supra; People v McCain, supra).*

Finally, we have considered the defendant's remaining contentions and find them to be without merit. Mangano, J. P., Lawrence, Spatt and Balletta, JJ., concur.