■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CHAKKA WILLIAMS, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Kings County (Quinones, J.), rendered May 26, 1987, convicting him of robbery in the third degree and grand larceny in the third degree (two counts), upon a jury verdict, and imposing sentence.

Ordered that the judgment is affirmed.

The record reveals that the defendant was accused of robbing the complainant in a subway station. The token booth clerk on duty at the time observed the incident and promptly contacted the New York City Transit Authority Command Center, which apparently notified the New York City Police Department Communications Bureau. An emergency telephone 911 operator at the Communications Bureau received the communication from the Transit Authority and prepared a coded "Sprint" record of the communication. This record contained a brief description of the assailant and indicated that the original notification to the Transit Authority regard-

ing the incident had emanated from the token booth clerk. The operator also dispatched a New York City Police Department unit to the scene. Shortly thereafter, two New York City Police Officers arrived at the scene and spoke to the complainant. They ascended to the street and discovered the defendant in a park across the street from the subway station. The complainant identified the defendant as the robber, whereupon the defendant was placed under arrest.

Prior to trial, the defendant's counsel subpoenaed the Sprint record. However, due to a purported typographical error in the subpoena prepared by the defense, the Sprint record was not located and turned over to the defendant prior to trial. Subsequent to the defendant's conviction, but prior to his sentencing, the defense counsel received the Sprint record and moved for a new trial on the grounds that the document constituted newly discovered evidence and *Brady* material. The trial court denied the motion. Moreover, although no *Rosario* claim was advanced, the court observed that the identity of the individual who contacted the emergency telephone 911 number was never established and the caller may have been a third party who did not testify at trial. On this appeal, the defendant contends that reversal is mandated because the failure to timely turn over the Sprint record constituted a *Rosario* violation. We disagree.

Pursuant to *People v Rosario* (9 NY2d 286), the prosecution is required to turn over any pretrial statement made by a prosecution witness relating to the subject matter of the witness's testimony. In *Rosario*, the majority of the Court of Appeals abandoned the then existing rule in New York which had permitted the defendant to see and use the statement only if it contained matters inconsistent with the testimony given by the witness on the stand *(see, People v Walsh,* 262 NY 140; *see also, People v Schainuck,* 286 NY 161), and adopted the Federal rule of *Jencks v United States* (353 US 657). The rationale underlying that rule is to provide the defendant with a fair opportunity to cross-examine, and possibly discredit, a prosecution witness by reference to the prior statement of the witness. Of course, the use of any prior inconsistent statement for the purposes of impeachment is governed by the rules of evidence *(see,* Richardson, Evidence §§ 501, 502 [Prince 10th ed]). The Court of Appeals has recently adopted a per se rule in reviewing claimed *Rosario* violations, such that a total failure to turn over an available statement of a prosecution witness mandates reversal, notwithstanding the fact that the evidence of the defendant's

guilt may be overwhelming or that the prior statement may be innocuous or inconsequential to the cross-examination of the witness *(see, People v Jones,* 70 NY2d 547; *People v Ranghelle,* 69 NY2d 56). However, while the penalties for *Rosario* violations may have increased, the category of statements identified as *Rosario* material has remained unchanged. *Rosario* material refers to "[a]ny written or recorded statement * * * *made by a person whom the prosecutor intends to call as a witness at trial,* and which relates to the subject matter of the witness's testimony" (CPL 240.45 [1] [a] [emphasis supplied]). It has never encompassed hearsay, rumor or gossip, attributable to a witness, that somehow finds its way into police files. Contrary to the defendant's present contention, the Sprint report in this case does not constitute a written or recorded statement made by the token booth clerk who testified at trial and could not have been used to impeach him. Rather, it is a New York City Police Department employee's coded version of a message received from a New York City Transit Authority employee. Hence, it is at best a secondhand recording of a statement allegedly attributable to a prosecution witness, fraught with all the risks of inaccuracy and unreliability attendant to the relaying of what is essentially hearsay information. Consequently, it stands in marked contrast to *Rosario* cases, which involve the use of a recorded prior statement which was made either by the witness himself or by an individual who directly heard the statement *(see, e.g., People v Perez,* 65 NY2d 154; *People v Fields,* 146 AD2d 505; *People v Ray,* 140 AD2d 380).

The dissent would extend the reach of the *Rosario* rule far beyond anything we have seen in this State in the past and far beyond the Federal *Jencks* rule to embrace matters which the defense views as "generally useful information" *(People v Rosario, supra,* at 290), rather than material to be used for impeachment purposes. Contrary to the position espoused by the dissent, the *Rosario* rule has only been applied to recorded statements made either directly by a witness who testified in the proceedings or by someone who heard the witness speak. Since the "firsthand" nature of the statement is essential to its use for impeachment purposes, this is not a semantic point. Furthermore, contrary to the view set forth in the dissent, the record is abundantly clear that the information recorded on the Sprint report in this case came from the Transit Authority Police rather than from the token booth clerk who was a witness at trial. The Sprint report itself, at its beginning, indicates: "TAPD 512" and, then following a cryptic narration

of the event, states: "AUTH TAPD 512". The token booth clerk testified that he only reported the incident to the Transit Authority Command Center on Jay Street. Even the defendant's appellate counsel concedes that the witness called the Transit Authority, which then notified the Transit Authority Police Department, which in turn notified the New York City Police Department which made the Sprint report. The position of the dissent that there was some type of automatic electronic relay constitutes sheer speculation which is not only without a scintilla of support in the record, but is belied by the contents of the report itself and by the statements set forth in the brief of appellate counsel.

The Sprint record involved herein is similar to the tape recording of the physical description of the offender broadcast by police in *People v Martinez* (71 NY2d 937). In *Martinez,* it was revealed during a *Wade* hearing that an eyewitness, Gonzalez, had given a description of the perpetrator to Police Officer Mosely who wrote it down. After the trial began, defense counsel moved to preclude Gonzalez from testifying since he had not been given a copy of the statement of Gonzalez as recorded by Police Officer Mosely. Mosely was unavailable at the time of trial and no notes of this description could be found. However, the People were able to furnish defense counsel with a tape of Mosely's transmission of the description from his radio car. The trial court denied the defendant's motion to preclude Gonzalez' testimony, but did give the jury an adverse inference charge because of the People's failure to produce Officer Mosely's notes. In affirming the conviction, the Court of Appeals recognized three differing categories of *Rosario* violations, i.e., delay in disclosing *Rosario* material, complete failure to disclose *Rosario* material, and, finally, loss or destruction of *Rosario* material. In *Martinez,* the Court of Appeals determined that Mosely's notes were the *Rosario* material and since they had been inadvertently destroyed or lost, the trial court had discretion to fashion an appropriate remedy by giving an adverse inference charge. The tape recording of Police Officer Mosely reading from his notes was not considered *Rosario* material.

In the case before us, if a written record made by the Transit Authority of the token booth clerk's call existed *(see, People v Dudley,* 156 AD2d 581), it would constitute *Rosario* material. However, the subsequent Sprint record of the Transit Authority communication does not. While the Sprint document in this case is even further removed from the initial source of the information than was the tape in *People v*

*Martinez (supra),* we find it significant that the Court of Appeals in that case neither considered nor characterized the tape as *Rosario* material or its duplicative equivalent. Accordingly, inasmuch as the Sprint record before us is too remote from the actual statement of the witness to be considered *Rosario* material, the failure to turn it over to the defense did not constitute a *Rosario* violation. Contrary to the dissent, this holding will not foster any evasion of the salutory benefits of the *Rosario* rule. If the witness whose statement is at issue testifies that written notes of the statement were made, the existence of *Rosario* material has been established *(see, People v Martinez, supra).*

We have considered the defendant's remaining contentions and find them to be without merit. Mangano, P. J., Eiber and Sullivan, JJ., concur.

Balletta, J., dissents and votes to reverse the judgment of conviction, on the law, and to order a new trial, with the following memorandum: The essential facts in this case are summarized in the majority's decision and are not seriously in dispute. Rather, the dispute in this case concerns the legal conclusion to be drawn from those facts, namely, whether the Sprint sheet, being a written record of the emergency telephone 911 call to the New York City Police Department, constituted *Rosario* material. While the majority concludes that it was not *Rosario* material, it is my opinion that there was a *Rosario* violation warranting a new trial.

In *People v Rosario* (9 NY2d 286), the Court of Appeals held that once a witness testified for the People, the prosecutor was obligated to turn over to the defendant's attorney the witness's prior statements relating to "the subject matter of the witness'[s] testimony" *(People v Rosario, supra,* at 289). The purpose of the rule "is to afford the defendant a fair opportunity to cross-examine the People's witnesses at trial" *(People v Poole,* 48 NY2d 144, 149). The statutory codification of the *Rosario* rule is embodied in CPL 240.45, which reads in relevant part as follows:

"1. After the jury has been sworn and before the prosecutor's opening address * * * the prosecutor shall * * * make available to the defendant:

"(a) Any written or recorded statement * * * made by a person whom the prosecutor intends to call as a witness at trial, and which relates to the subject matter of the witness's testimony" (CPL 240.45 [1] [a]).

During the almost 30 years since the *Rosario* decision, the

Court of Appeals has consistently refused to dilute the force and effect of the rule by finding some artificial means of excluding a statement from *Rosario's* scope. Indeed, the court has made it clear that "[t]he character of a statement is not to be determined by the manner in which it is recorded, nor is it changed by the presence or absence of a signature" *(People v Consolazio,* 40 NY2d 446, 453). Thus, written statements made by a witness *(see, People v Rosario, supra),* as well as a statement in narrative form made by an Assistant District Attorney in preparation for trial *(see, People v Hawa,* 15 AD2d 740, *affd* 13 NY2d 718), an unsigned questionnaire-worksheet used to assist in Grand Jury presentations *(see, People v Consolazio, supra),* police reports *(see, People v Ranghelle,* 69 NY2d 56), memo book entries made by an investigating detective *(see, People v Ray,* 140 AD2d 380), notes made by a parole officer *(see, People v Fields,* 146 AD2d 505), and even statements recorded by private parties at the behest of law enforcement personnel and within their possession and control *(see, People v Perez,* 65 NY2d 154), have all been held to constitute *Rosario* material. Moreover, and of particular relevance here, this court has held that the tapes of telephone calls made to an emergency telephone 911 operator also constitute *Rosario* material *(see, People v Kent,* 125 AD2d 590, 591; *see also, People v Parker,* 157 AD2d 519).

In the instant case, the defendant contends that the Sprint sheet is *Rosario* material because it contains a statement by the token clerk who testified for the prosecution, and because it was in the People's possession inasmuch as it was in the custody of the Police Department. There can be no dispute that the statement contained on the Sprint sheet and which described the attacker was directly related to the subject matter of the token clerk's testimony.

The People do not claim that the substance of the statement precludes it from being *Rosario* material. Rather, their contention is that the statement was relayed by a Transit Authority employee and, as such, it is not the witness token clerk's statement, and hence, not *Rosario* material. In my view, this assertion is not supported by the record or the law; and, given the policy considerations underlying *Rosario,* should be rejected by this court. The distinction sought to be drawn by the People is merely one of semantics.

First, contrary to the majority's suggestion, there is nothing in the record which definitely establishes that the message was relayed to the emergency telephone 911 operator by a Transit Authority official. The record is not crystal clear on

this matter. It may very well be that this information was automatically relayed electronically from the Transit Authority to the New York City Police Department. In such an event, there would be no basis on which to rule that the Sprint report was not *Rosario* material because such an electronic transfer of this information would not have altered its substance or character at all. It would be as though the witness had called the emergency telephone 911 number directly, creating his own record, which undoubtedly would constitute *Rosario* material *(see, e.g., People v Kent,* 125 AD2d 590, *supra; People v Parker,* 157 AD2d 519, *supra).* However, under the circumstances of this case, the actual means by which the information was relayed from the Transit Authority to the Police Department is irrelevant. The precise mode of transmission should not be the decisive factor in determining whether the Sprint report constitutes *Rosario* material.

Thus, in my view, even if the information was relayed to the emergency telephone 911 operator electronically or by a Transit Authority official, the Sprint sheet should still be considered *Rosario* material. To hold otherwise would circumvent the policy of the *Rosario* rule, which is that "a right sense of justice entitles the defense to examine a witness'[s] prior statement, whether or not it varies from his testimony on the stand" *(People v Rosario,* 9 NY2d 286, 289, *supra).* This rationale has been viewed as so fundamental to the administration of justice that the complete failure to provide *Rosario* material to the defense results in an automatic reversal of the judgment conviction and the holding of a new trial regardless of whether the statement itself was prejudicial or harmless *(see, People v Ranghelle,* 69 NY2d 56, *supra; see also, People v Jones,* 70 NY2d 547, 553; *People v Novoa,* 70 NY2d 490, 499).

In view of this State's strong policy regarding *Rosario* material and the repeated failures of the People to convince the Court of Appeals to carve out exceptions to the rule, this court should not allow the People to sidestep *Rosario* merely because the information contained in the report was apparently relayed by another official who happened not to be a New York City Police Department employee. This is particularly so where the two interacting officials or employees are members of the New York City Transit Authority and the New York City Police Department. Both are local law enforcement agencies, and a report from one to the other is tantamount to a report from one police official to another, and it should be viewed as *Rosario* material when it contains relevant statements of a prosecution witness.

By accepting the People's argument, many statements required to be produced under *Rosario* will now escape production. For instance, if a witness was to give a description of a perpetrator to a police officer, who seconds later repeated that description to his partner, who then jotted it down, the latter's notes would not be considered *Rosario* material. Similarly, if a witness made a statement to a trial assistant who relayed it to an Assistant District Attorney, who then wrote it down, that statement would not be considered *Rosario* material either. There are numerous situations in which members of a law enforcement agency might relay statements made to them and moments later the actual note taking might be done by someone else. If such material is not deemed to fall under the protection of *Rosario,* the effects could be detrimental. One can only imagine the potential for deliberate circumvention.

The case of *People v Martinez* (71 NY2d 937), cited by the majority, is inapposite since the issue in *Martinez* was not whether the tape was *Rosario* material; but, rather, the issue concerned the appropriateness of the sanction imposed upon the prosecution for the loss of a police officer's notebook containing statements given by a witness. Thus, the Court of Appeals in *Martinez* did not discuss whether the tape of a radio communication was *Rosario* material as that issue was not before it.

Given the fact that the Transit Authority Police Department is a law enforcement agency, the information contained on a Sprint sheet is either relayed to the police electronically or immediately after it is received by an official of the Transit Authority, and the Court of Appeals notable refusal to carve out exceptions to the rule, coupled with the court's statements that the purpose of the rule is to "ensure that a defendant 'receives the full benefit of a [prosecution] witness'[s] statements for impeachment purposes' " *(People v Ranghelle,* 69 NY2d 56, 62, *supra),* the Sprint sheet should be deemed *Rosario* material.

The prosecution argues that the danger of distortion is great if we allow a transit official to relay information to the police via the 911 emergency telephone number and then declare the Sprint record *Rosario* material. This fear is unfounded. First, in this type of situation, the information is relayed immediately if not instantaneously by parties trained in receiving and transmitting such information. Thus, the minimal chance for distortion is far outweighed by the prejudice which would be caused to the defendant, particularly since "[t]he focus of

*Rosario* is on fairness to [the] defendant" *(People v Jones,* 70 NY2d 547, 553, *supra).*

Secondly, the People's assertion that the Sprint sheet should not be considered *Rosario* material because the witness would not be cross-examined on what he said but rather on what the relaying transit official said, can be characterized as over-reaching. In every instance wherein *Rosario* material is acquired, there is the possibility of distortion, left out statements, or quoting out of context. Many of the cases dealing with the *Rosario* rule involve a police officer's notes or an Assistant District Attorney's report and none of these cases requires that the writings or records be verbatim transcriptions of a witness's statements in order to classify them as *Rosario* material. In fact, it is possible that an emergency telephone 911 operator could make a mistake and distort a caller's statements but the Sprint record of that call would nevertheless be considered *Rosario* material. Thus, the People's contention that the chance for distortion should preclude a finding that the Sprint sheet is *Rosario* material is easily dismissed.

Finally, the People argue that if we hold that this Sprint sheet is *Rosario* material we would be imposing an undue burden on the People. This assessment is irrational. If we limit our holding to the Sprint sheet, the record of such a call is already in the hands of the police just as it would have been had the token clerk called 911 directly, and therefore, no additional burden whatsoever is placed on the prosecution. Moreover, the Court of Appeals has held that " ' "the State has no interest in interposing any obstacle to the disclosure of the facts" ', and society's interest in maintaining criminal trials as truth-finding processes requires that the burden of locating and producing prior statements of complaining witnesses, filed with police agencies, remain solely with the People" *(People v Ranghelle,* 69 NY2d 52, 64, *supra; see, People v Rosario,* 9 NY2d 286, 290, *supra).*

In conclusion, we should not weaken the rule, whose purpose is to ensure a fair trial, by holding that this Sprint sheet is not *Rosario* material merely because the information contained therein may have been passed along by a Transit Authority official.

Accordingly, inasmuch as the Sprint sheet was in the People's possession *(see, People v Consolazio,* 40 NY2d 446, *supra),* and since they failed to supply the defendant with it, reversal of the judgment of conviction and a new trial is warranted *(see, People v Ranghelle, supra).*